## LYNCH v. MAGNAVOX CO. et al.

No. 6613.

District Court, S. D. California, C. D.

July 22, 1935.

John H. Klenke, of Los Angeles, Cal., for plaintiff.

Fitzgerald, Abbott & Beardsley and M. W. Dobrzensky, all of Oakland, Cal., for defendants Magnavox Co. and Jensen Radio Mfg. Co.

COSGRAVE, District Judge.

Defendants move to strike fifty separate portions of the amended complaint. The motion is buttressed and reinforced by a special demurrer, specifying, among numerous other vices, forty-six particulars in which they assert the amended complaint is uncertain—all urged upon the hearing of the court at a single afternoon session devoted to the hearing of this among a dozen other matters of equal importance. Only the demurrer is considered.

According to the complaint, Jackson Bell Company, Limited, had been in the business of manufacturing and selling radio receiving sets in interstate commerce and had a valuable business in that industry. In such receiving sets it had used various types of loud speakers, including those manufactured by the defendants as well as those manufactured by others. The defendants were similarly engaged, and specialized in the manufacture of loud speakers. The defendant Lektophone Corporation, representing that it owned certain patents pertaining to radio loud speakers, was engaged in the business of licensing manufacturers under its asserted patents.

Between May and September, 1932, the defendants entered into a conspiracy among themselves to effect a monopoly in the manufacture and sale of loud speakers in interstate commerce, and entered into a combination in restraint of trade with respect thereto. Pursuant to such conspiracy, defendant Utah Radio Products Company acquired the exclusive license under certain patents of Lektophone Corporation. Some of the defendants, asserting ownership of patent rights, pooled the same and extended cross-licenses to each other under all of the asserted patent rights of the pool. The purpose of this combination and pooling of the patent rights and cross-licenses was to further the attempted monopoly and, under threat of patent litigation of the patent rights of the parties to the pool, to force radio receiving set manufacturers to discontinue the purchase of loud speakers from any one other than members of the pool or their licensees,

or manufactured under the patents of the pool, and thereby to increase, maintain, and control the price that radio receiving set manufacturers would be compelled to pay for the necessary loud speakers; and under threat of patent litigation to force manufacturers of loud speakers to discontinue manufacturing or to acquire a license from the pool on extortionate terms, and thereby the cost of loud speakers would be increased. Under the conspiracy, the campaign was not to be waged by bringing infringement actions against manufacturers, but by intimidation and harassment of customers of the manufacturers. It was agreed among the defendants that separate infringement suits in specified geographic areas would be brought against customers of the independents; that other members of the combination would file suits simultaneously or immediately thereafter against the same or different customers; that the same thing would be done in other geographic areas; that campaigns of intimidation and harassment by word of mouth or in writing would be waged against the customers, and suits against them would be threatened.

Agreeably to this conspiracy, the Lektophone Corporation and Utah Radio Products Company instituted twenty-nine different infringement suits in the state of New York, and the Magnavox Company filed twenty-six similar suits in the same state. The defendants, pursuant to the conspiracy, circularized the trade generally in all parts of the country, threatening infringement suits against customers of the independent manufacturers, and on December 23, 1932, an infringement suit was brought in this court against the Jackson Bell Company, Limited, for infringement of one of the patents.

As a result of this conspiracy, the Jackson Bell Company lost its business and went into bankruptcy on February 13, 1933.

All of the foregoing acts are violative of sections 1 and 2 of the Sherman Anti-Trust Act (15 USCA §§ 1, 2), and the plaintiff, the trustee in bankruptcy of the Jackson Bell Company, seeks damages against all of the members of the pool.

Several things appear from the foregoing brief résumé of plaintiff's amended complaint. No facts are stated showing that the business of the Jackson Bell Company, Limited, extended over state lines; neither are any facts stated showing that the business of the defendants crossed state lines, although such might be inferred, since the location of the principal places of business of the various defendants is shown to be in different states. No facts are stated showing that any interstate commerce business of plaintiff Jackson Bell Company was actually restrained. No facts are stated showing that the conspiracy charged resulted in excessive cost of radio loud speakers, or that the price was actually controlled.

The most important feature of the complaint, however, is the entire failure to state that the patent rights asserted by the pool are in any degree invalid. The issuance of a patent imports validity. The complaint lacks entirely any statement that the defendants are not acting in perfect good faith, and in the honest belief in the validity of their patents and of the licenses under which their product is manufactured. The complaint amounts only to this, that defendants claim the Jackson Bell Company infringed the patents of the pool, and by reason of threats of infringement suits made to the customers of Jackson Bell Company, Limited, the company failed. If the patent were invalid, the suit in equity filed in this court on December 23, 1932, would have determined that fact, and Jackson Bell Company could have obtained in that suit all the relief it was entitled to; in fact, such situation still exists, for the trustee in bankruptcy, the plaintiff in this action, is privileged, if not charged with the duty, to assert such defense and seek such relief in the suit named.

The active campaign of litigation and threats charged against the pool is the usual course adopted by the owner or licensee of a patent who seeks relief against infringement. I find no authority that because such owners or licensees combine, their acts become unlawful.

I find some difficulty in satisfying myself of the precise line where the monopoly given under the patent laws ends and the monopoly condemned by the Sherman Anti-Trust Act (15 USCA § 1 et seq.) commences. Suits have been decided by the United States Supreme Court that to some extent discuss the subject. It is true that plaintiff charges against defendants the purpose to control inter-

state markets; nevertheless, in describing the specific acts done by which this control was to be exercised, nothing is stated further than what defendants may lawfully do under their patents and licenses from each other. There is no showing of actual restraint of interstate commerce, either reasonable or unreasonable. The pooling of patents and cross-licensing has not been condemned by the United States Supreme Court.

In Standard Oil Co. v. U. S., 283 U. S. 163, 175, 51 S. Ct. 421, 425, 75 L. Ed. 926, decided in 1931, the court says: "But an agreement for cross-licensing and division of royalties violates the Act only when used to effect a monopoly, or to fix prices, or to impose otherwise an unreasonable restraint upon interstate commerce."

Other cases that to a considerable extent throw light upon the subject are: United States v. General Electric Company, 272 U. S. 476, 47 S. Ct. 192, 71 L. Ed. 362; Appalachian Coals, Inc., v. United States, 288 U. S. 344, 53 S. Ct. 471, 77 L. Ed. 825; E. Bement & Sons v. National Harrow Co., 186 U. S. 70, 22 S. Ct. 747, 46 L. Ed. 1058:

For the reason, therefore, that the things charged to defendants appear to have been done by them in perfect good faith and in an honest belief in the validity of their patent rights, that no restraint of interstate commerce is shown, I think the complaint states no cause of action. The demurrer is therefore sustained with twenty days allowed plaintiff to amend if so advised. Exception. to plaintiff.